516 P.2d 358

William D. MARSH and Bettie J. Marsh, Plaintiffs and Appellants,

v.

Norris J. HUBBARD, Defendant, Third-Party Plaintiff and Respondent,

v.

M. C. MARSH, Third-Party Defendant and Appellant.

No. 13157.

Supreme Court of Utah.

Nov. 28, 1973.

2d 41, 395 P.2d 535, and authorities therein cited, including Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

William D. Marsh, Marsh & Marsh, Ogden, for plaintiffs and appellants.

Omer J. Call, Brigham City, for defendant-third-party plaintiff and respondent.

HENRIOD, Justice:

Appeal from an $800 trespass action, tried to the court, having to do with placing dams to protect defendants' asserted water rights. Affirmed, with costs to defendants.

The question of trespass, subject of this action, never seems to have been exactly the real issue. By some sort of protracted procedure, this case wound up with some other kind of possible, but procedurally unimportant, abortive, prolonged, adjudication of water rights, involving those having to do with some springs from which the plaintiffs and defendants and some inter-pleaded other people irrigated, and drank, including about 100 unidentified fish that died of thirst allegedly because of the trespass.

The voluminous record in this case, and the appeals and expense and hard feelings incident thereto economy-wise seem sort of minimal in light of the $800 prayer.

We think the trial court deserves some minimal praise for its wisdom in deciding this case as it did, and in saying that because there were water rights long since adjudicated pre-empting a quaere clausum fregit action, suggested something might be lacking,—even an unreasonable violation of the close; and that rights reaching back before 1903 and afterward decreed, justified the judgment awarding the parties a percentum of a fluctuating flow from springs rather than adjudicating the so-called duty of water in cubic feet per second, etc.,—in this basic tort action of trespass.

This seemingly minor litigation, fathered but not featured by a previous case,[1] simply, in our opinion, points up the possibility that that from which pure water sprang, as here appears, was spoliated by vitriol and brotherly bad blood, hardening the water and dampening this opinion.

The allocation of some of the waters in ⅔ and ⅓ shares, as per the decree in this case, to which we refer, and affirm, seems not to have represented either an increment or detriment to either or all of the litigants here, but a hopefully possible interment of emotions that water and fences invariably engender in this arid area, where little drops of water or little cedar fence splinters sometimes can be accompanied by un-neighborly tendencies and pro-

1. North v. Marsh, 29 Utah 2d 73, 504 P.2d 1378 (1973).

clivities which seem stifled by drought or artificial boundaries and barriers.

CALLISTER, C. J., and ELLETT and TUCKETT, JJ., concur.

CROCKETT, J., does not participate herein.